UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Michelle Jacobson, | Case No. _____ |
| Plaintiff, | |
| | **COMPLAINT AND** |
| | **JURY DEMAND** |
| v. | |
| County of Chisago and | |
| Richard Duncan, both individually and | |
| in his official capacity as Sheriff of County of Chisago, | |
| Defendants. | |

_____

**INTRODUCTION**

As Chisago County Sheriff, Richard Duncan admits that he intentionally made false statements to Plaintiff Michelle Jacobson intending to coerce her to engage in a sexual relationship with him by threatening her safety and the safety of her children if she refused. Defendant County of Chisago admits that Duncan's actions were an abhorrent and shocking violation of the standard of conduct expected of Duncan and constituted sexual harassment of Plaintiff Jacobson.

1

## THE PARTIES

1.   Plaintiff Michelle Jacobson is an individual residing within the State of Minnesota.

2.   Defendant County of Chisago is a political subdivision of the State of Minnesota with a principal location of 313 N. Main St., Center City, MN 55012.

3.   Defendant County of Chisago is an employer within the meaning of the Minnesota Human Rights Act.

4.   Defendant Richard Duncan is an individual who, upon information and belief, resides in Chisago County, Minnesota.

5.   Defendant Richard Duncan was the elected Sheriff of the County of Chisago in 2010 and served as Sheriff until May 4, 2018.

## JURISDICTIONAL STATEMENT

6.   Plaintiff brings this case, in part, pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

7.   This Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. §1343(3) and 28 U.S.C. §1331.

8.   Plaintiff's remaining claims are so related to those over which this court has original jurisdiction that they form part of the same case and controversy.  Supplemental jurisdiction is therefore appropriate under 28 U.S.C. §1367.

## FACTS GIVING RISE TO LIABILITY

9.     Plaintiff began working for Defendant County as an Office Support Specialist in the Chisago County Sheriff's office in July of 2013, and was promoted to the position of Crime Analyst/Office Support Specialist in 2015.

10.    Defendant Duncan, as Chisago County Sheriff, was Plaintiff's highest-ranking supervisor.

11.    Throughout her employment, Plaintiff observed that Duncan tolerated an environment in which "body talk" and sexual banter was common.

12.    Beginning on October 26, 2017, Defendant Duncan began a course of action intended to cause Plaintiff emotional distress and to coerce her to engage in sexual conduct with him.

13.    On October 26, 2017, Duncan called Plaintiff into his office and informed Plaintiff that he was attempting to restructure her position to increase her pay,

14.    After informing her he intended to increase her pay, Duncan showed her a piece of paper he claimed to have received from an anonymous source called "Control Freak."

15.     Duncan told Plaintiff the letter was one of three he had received from "Control Freak." He said he had destroyed the first two letters.

16.     The letter he showed her threatened the safety of her children and demanded she spend three days in a hotel room with Duncan.

17. Duncan said he was concerned for the safety of Plaintiff's children if she did not do as "Control Freak" demanded and he implored Plaintiff to go along with his demands.

18. Duncan repeatedly instructed Plaintiff not to tell anyone about the letter and not to contact any other law enforcement personnel about the letter.

19. Duncan claimed to have had the letter analyzed by another law enforcement agency for fingerprints.

20. On October 27, 2017, Duncan texted Plaintiff, telling her he had received another letter, telling her he was arranging for her to go to a "training," which he had told Plaintiff would be the excuse used for going away with him.

21. Duncan texted Plaintiff telling her to "Be prepared for anything."

22. Duncan texted Plaintiff on October 30, 2017 claiming to have received another letter from "Control Freak."

23. Duncan also claimed that he had retrieved a similar letter from her home.

24. Duncan then emailed her, relating what he said was the content of the letters. Duncan's email claimed that "Control Freak" again threatened the safety of her children and asked whether she would have a "nervous breakdown."

25. The October 30, 2017 email claimed that "Control Freak" wanted to control Plaintiff.

26. The October 30, 2017 email said, "This is about protecting others and yourselves."

27. The October 30, 2017 email asked, "Michelle how far would you go to protect your kids, your husband, your reputation?"

28.     Duncan's email directed Plaintiff to get in a car with Duncan and drive a designated route to a hotel in Bemidji, to stay in a single room with a king size bed and demanded that she follow instructions that would be delivered in a "packet."

29.     Duncan wrote, "I do think this guy is crazy and he could do anything but he is smart."

30.     Duncan told Plaintiff that the letter he had picked from Plaintiff's home said, "I want you both to know what is at stake here.  This is no idol threat."

31.     Duncan's email said the letter addressed to Plaintiff said, "I understand that this might be hurting you and the Sheriff emotionally but this is the point (at least in your case)…I know you are not the strongest person emotionally and really don't like to really step out of the box or norm.  I am kind of shocked that you decided to go along with this plan.  I figured you would crumble and hide in the pathetic shell of yours…I know you will talk to the Sheriff, so ask yourself is there anything that I can make you two do that would be worst then what I can do to your families."

32.     On October 31, 2017, Duncan texted Plaintiff indicating he was going to go along with the demands of "Control Freak" to try to "pull him out."

33.     Duncan implied that the letter writer wanted them to have sex and suggested that they would have to follow his instructions.

34.     On November 2, 2017, Duncan met with Plaintiff in his office and told her he was going to go along with "Control Freak's" demands.

35.   In the November 2, 2017 meeting in his office, Duncan made comments about Plaintiff's children being young, specifically mentioning Plaintiff's daughter's social media accounts.

36.   In the November 2, 2017 meeting in Duncan's office, Plaintiff told Duncan she would not go to the hotel with him.

37.   In the November 2, 2017 meeting in Duncan's office, Duncan repeatedly asked Plaintiff if she was "sure," talking about how vulnerable her children were.

38.   Plaintiff believed Duncan was trying to scare her into compliance by threatening her children.

39.   On November 3, 2017, Duncan texted Plaintiff saying he had received a "FU" letter from "Control Freak."

40.   On November 6, 2017, Duncan met with Plaintiff in his office and told her that "Control Freak" had hacked into his phone and email, telling her he had "wiped his phone and computer clean" and had put the letters in a safe place.

41.   On November 20, 2017, Plaintiff told Sergeant Justin Wood what Duncan had done.

42.   Wood's response was, "The Sheriff is trying to get you to sleep with him."

43.   Wood encouraged Plaintiff to tell Human Resources.  Plaintiff told him she was afraid of Duncan and feared that Duncan would hold the job reclassification over her head in retaliation.

44.   Plaintiff showed Wood the emails from Duncan and asked him what he would have done if he had received the type of letters described in Duncan's emails.  Wood told her that he would immediately call the Bureau of Criminal Apprehension.

45. Plaintiff also told Capt. Tracy Armistead about the letters Duncan claimed to have received and showed her Duncan's emails and texts.

46. Armistead told Plaintiff that Duncan was playing a mental game with her to get her to sleep with him.

47. Armistead asked Plaintiff to go to Human Resources. Plaintiff told her she feared retaliation from Duncan. Armistead and Plaintiff reviewed Plaintiff's "safety plan" for working around Duncan. Plaintiff informed Armistead that she made sure to leave the door open when meeting with Duncan and made sure not to be alone after hours.

48. Plaintiff was applying for jobs outside the County.

49. When Plaintiff learned that she had been turned down for a position for which she had applied, she felt as though her escape plan had failed, and she consented to report Duncan's conduct to the County Human Resources department.

50. In response to Plaintiff's complaint, Defendant County hired an outside investigator, who conducted interviews of Plaintiff and other witnesses.

51.  Defendant Duncan refused to be interviewed as part of the County's investigation.

52. On April 25, 2018, Defendant Duncan emailed his attorney, stating, "I, and only I, am the source of the emails and text in regard to the current inquiry." Duncan's attorney provided a copy of that email to the County.

53. On April 26, 2018, the investigator hired by Defendant County issued an Investigative Report, finding that Defendant Duncan's actions "constitute an abhorrent and shocking violation of the standard of conduct expected of a

department head, a law enforcement officer, an elected Sheriff, an employee of Chisago County, a supervisor, and a community leader."

54.   The County's Investigative Report further concluded that Duncan "engaged in sexual harassment of Jacobson by making unwelcome sexual advances," while simultaneously talking to her about increasing her pay as a County employee.

55.   Defendant County took no adverse action against Defendant Duncan.

56.   Because of her fear of Duncan and his son, who remains employed as a Deputy Sheriff for Defendant County of Chisago, Plaintiff constructively discharged her employment with the County of Chisago.  She did not return to work after being interviewed by the County's investigator.

57.   Duncan resigned his employment on May 4, 2018, claiming his retirement was due to his physical health.

58.   On May 29, 2018, Plaintiff received an email communication from the kjrlduncan@gmail.com indicating it was from Kelly Duncan, Defendant Duncan's wife.

59.   This email was unwelcome.

60.   The email writer claimed to have received a letter from Plaintiff.  Plaintiff did not send a letter to either Duncan or his wife.

61.   As a result of Duncan's actions, Plaintiff suffered severe emotional anguish, including but not limited to the following:  fear for her safety; fear for the safety of her children; fear for her job; feelings of revulsion, disbelief, horror, confusion and

distrust; and fear of retaliation.  Plaintiff suffered physical symptoms of distress, including crying, shaking, sleeplessness and nervousness.

62.     As a result of Duncan's actions, Plaintiff began experiencing fear of being alone, fear of being within the County of Chisago, and fear of having her children within the County of Chisago.

63.     Because of Plaintiff's fear of Duncan, Plaintiff sold her home and relocated her family to a home in a different county, requiring her children to change schools.

64.     In February of 2018, Plaintiff began seeing a mental health counselor as a result of Defendants' actions.  Plaintiff continues to require mental health treatment as a result of Defendants' actions.

## COUNT ONE
### Minnesota Human Rights Act
### County of Chisago

65.     Plaintiff realleges the allegations of the preceding paragraphs and includes them in this count as though fully restated herein.

66.     The conduct of Sheriff Duncan created a hostile and intimidating work environment, which substantially interfered with Plaintiff's ability to perform her job, in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.*

67.     As a result of this violation of the Minnesota Human Rights Act, Plaintiff has suffered and will continue to suffer economic loss and emotional anguish.

68.     As a result of this violation of the Minnesota Human Rights Act, Plaintiff has incurred, and will continue to incur, attorney fees and costs.

194a198943307ce5

## COUNT TWO
### Intentional Infliction of Emotional Distress
### Defendant County of Chisago and Defendant Duncan

69.     Plaintiff realleges the allegations of the preceding paragraphs and includes them in this count as though fully restated herein.

70.     Defendant Duncan's conduct toward Plaintiff was extreme, outrageous and intentional.   Defendant Duncan intended to cause Plaintiff extreme emotional distress in order to compel her compliance with his demands.

71.     As a result of Defendant Duncan's intentional infliction of emotional distress, Plaintiff suffered, and continues to suffer, severe emotional distress.

72.     Defendant Duncan used his position as Chisago County Sheriff to threaten, intimidate and coerce Plaintiff to comply with his abhorrent demands.  Defendant Duncan acted within the scope of his employment, using his authority as Sheriff to dissuade Plaintiff from contacting other law enforcement agencies, using his physical office space to meet with and threaten Plaintiff and threatening Plaintiff during her work hours.  As such, Defendant County of Chisago is liable for the actions of Defendant.

## COUNT THREE
### Section 1983
### Defendant Duncan

73.     Plaintiff realleges the allegations of the preceding paragraphs and includes them in this count as though fully restated herein.

74.  Defendant Duncan is liable to Plaintiff for deprivation of her constitutional right. Defendant Duncan acted under color of state law to deny Plaintiff equal protection guaranteed by the Fourteenth Amendment to the United States Constitution by sexually harassing her.  Defendant Duncan is liable to Plaintiff for this deprivation of right under 42 U.S.C. §1983.

75.  Defendant Duncan's deprivation of Plaintiff's right to be free from sexual harassment caused Plaintiff damage, including economic damage and emotional distress.

76.  As a result of Defendant Duncan's actions, Plaintiff has incurred attorney fees and costs.

### PRAYER FOR RELIEF

Plaintiff demands that the Court enter judgment in her favor and prays the Court to award the following relief:

1.  Damages for loss of career opportunity, loss of benefits and loss of future compensation sustained as a result of Plaintiff's constructive discharge from employment with the County of Chisago;

2.  Economic damages sustained as a result of Plaintiff being forced to move her family to a different County in order to avoid the presence and influence of Defendant Duncan;

3.  Damages for emotional anguish;

4.  Treble damages under the Minnesota Human Rights Act, Minn. Stat. §363A.29;

5.  An award of attorney fees and costs for violation of the Minnesota Human Rights

    Act and 42 U.S.C. §1983.

6.  Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury on all Counts alleged herein.


Dated: August 29, 2018                    *s/Leslie L. Lienemann*
                                          Leslie L. Lienemann (MN No. 0230194)
                                          Celeste E. Culberth (MN No. 0228187)
                                          **CULBERTH & LIENEMANN, LLP**
                                          1050 UBS Plaza
                                          444 Cedar Street
                                          St. Paul, MN 55101
                                          (651) 290-9300 (Telephone)
                                          (651) 290-9305 (Facsimile)


                                          **ATTORNEYS FOR PLAINTIFF**