UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Jacobson, | Case No. 18-cv-02528 (SRN/HB) |
| Plaintiff, | |
| v. | **PROPOSED *AMICUS CURIAE* BRIEF OF ASSOCIATION OF MINNESOTA COUNTIES** |
| County of Chisago and Richard Duncan, both individually and in his official capacity as Sheriff of County of Chisago, | |
| Defendants. | |

## INTRODUCTION

There are four undisputed facts that are central to understanding the effects of the position jointly held by the Amicus Minnesota Department of Human Rights ("MDHR") and Plaintiff on public entities. First, the County was not aware of the former Sheriff's conduct until after it had ceased. Second, the County did not control the former Sheriff's employment or conduct. Third, the County acted reasonably and immediately after the conduct was reported to its Human Resources Department. Fourth, the County had policies in place prohibiting sexual harassment. Yet, Plaintiff and Amicus ask the Court to conclude that counties can be liable for conduct of which they are unaware, by individuals they do not control, and even if they respond reasonably once they learn of such conduct and have policies prohibiting it. In other words, if a county does everything correctly, it can still violate the Minnesota Human Rights Act ("MHRA") because it had the unfortunate circumstance of its citizens electing a sheriff who unilaterally engaged in

wrongful conduct. The broad purposes of the MHRA are served by allowing plaintiffs to pursue remedies against individual bad actors. But they are not served by unjustifiably expanding the MHRA's reach to punish governmental entities that successfully stop sexual harassment after only one instance.

## IDENTITY OF *AMICUS CURIAE* AND FINANCIAL DISCLOSURES

Pursuant to Rule 29 of the Federal Rules of Appellate Procedure, the Association of Minnesota Counties ("AMC") seeks to submit this brief in support of the Defendant Chisago County's position on the pending cross motions for Summary Judgment. The AMC is a non-partisan statewide voluntary association of all 87 counties in the State of Minnesota organized pursuant to Minnesota Statutes Section 375.163. The mission of the AMC is to provide counties with support so that they may effectively perform the duties and responsibilities delegated to them by law. The AMC promotes and advances the interests of counties in obtaining appropriate responses to issues from state and federal executive and legislative branches, and fosters and encourages innovative and responsive county service delivery, policy decisions and public resources utilization. The AMC works closely with the legislative, administrative and judicial branches of state government on issues involving adoption, enforcement and modification of laws and policies that affect counties. The AMC represents the position of counties before state and federal government agencies and the public.

The AMC is a non-governmental corporation with no parent corporation. No publicly-owned corporation controls any part of the AMC. No party's counsel authored any part of this brief. The AMC is a membership-based organization and counties,

including Chisago County, pay membership dues to AMC.  Membership dues support all

of AMC's initiatives and advocacy efforts, including drafting amicus briefs.  No

payments are specifically designated to support amicus briefs in general or this brief in

particular.

## ARGUMENT

### A.   AN ELECTED COUNTY SHERIFF IS NOT THE ALTER EGO OF THE ENTIRE COUNTY GOVERNMENTAL UNIT.

The first question the Court must address is whether an elected county sheriff is

vested with sufficient authority that they should be considered a proxy or alter ego for the

county.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998).   The *Faragher/*

*Ellerth* defense is unavailable if the individual who engaged in sexual harassment is the

alter ego or proxy of the organization.  While a county sheriff certainly has significant

power to make decisions on behalf of the sheriff's office, that authority is limited to the

office.  A sheriff does not have broad authority to act on behalf of the county as a

governmental body.

Sheriffs are not the only elected county officials.  There are five elected county

officials who manage discrete aspects of county government and are responsible for day-

to-day operations of departments of the county and the employees therein.  These include

sheriffs (Minn. Stat. Chapter 387), county attorneys (Minn. Stat. Chapter 388), auditors

(Minn. Stat. Chapter 384), treasurers (Minn. Stat. Chapter 385), and recorders (Minn.

Stat. Chapter 386).  Many counties have combined the role of auditor and treasurer into

one elected position.  Counties also have elected county commissioners (Minn. Stat.

Chapter 375).

1.   **The legal framework that establishes counties divides authority among
     multiple elected officials and the county board with no one person or
     office able to exercise all county authority.**

Counties are created by Minnesota Statutes.  They have no existence without

being created by the Minnesota Legislature.  Thus, as is often said in Minnesota cases,

counties have only those powers granted them by statute, and then by necessity, those

powers necessarily implied to carry them out.  *See, e.g., Cleveland v. Rice County,* 56

N.W. 2d 641 (Minn. 1952).

The authority for overall operations of county government is vested in county

commissioners.  *See generally* Minnesota Statutes Chapters 373, 375.  County

commissioners are officials elected to a term of office by the voters.  Minn. Stat. §

375.01.  The operations of county government are wide ranging.  Chapters 373 and 375

of Minnesota Statutes, just two of the large number of statutes vesting powers in a

county, set forth the wide panoply of powers that counties exercise, in all areas of the life

of their citizenry.  *See generally* Minnesota Statutes Chapters 370 to 403.  Counties

operate in most areas of life that affect the public on a daily basis: from contracting, to

the sale and purchase of lands, to road building, to zoning and the control of the use and

development of land, to building and maintaining roads, to the operation of recreational

areas, to the provision of social services, veterans' services, and services to the elderly.

And as specifically stated by law, the powers of a county "as a body politic and

corporate" are only exercised by the county board.  Minn. Stat. § 373.02.  Not by a

Sheriff.  Or the County Attorney.  Or the Auditor.  Only the board has this collective authority.  This is important to keep in mind in light of arguments advanced in this case.  The only elected officials responsible for the entire operation of county government are county board members acting together.  To use the phrase Amicus Minnesota Department of Human Rights ("MDHR") uses, the board is the "head of the public body."  The sheriff is not the head of the county.  To argue that an elected county sheriff is the "alter ego" of the county, or should be considered as such, ignores how county government functions and the statutory framework setting up the powers of county government.

County government has been set up and shaped through the historical roles and modes of operation that faced our founders as they established states and a nation.  Sheriffs were common and fairly autonomous law enforcers in English history.  Recorders held a key role as the record keeper of documents showing property ownership, one of the most important forms of wealth that existed in our history.  Auditors and treasurers accounted for the receipt, use, and control of money as the country grew, expanding geographically and developing a more urban based society.  A democratic government based on the rule of law led to the importance of attorneys, both private and for the government.

These "officers" became elected officers.  Some became statewide, enshrined in the State Constitution, like the State Auditor or Attorney General, who serves as counsel for Amicus MDHR.  All of them became elected county officers: auditors, treasurers, recorders, attorneys and sheriffs.  Each had a particular Chapter of Minnesota Statutes devoted to their office, and identifying their duties and responsibilities.  *See* Minnesota

Statutes Chapters 384-388, covering county auditors, recorders, treasurers, sheriffs and attorneys, respectively.

 Elected officials are generally not considered to be employees of a county in the true sense of the word.  Both of the parties and Amicus agree on this point.  This means that elected officials are not subject to discipline or termination by the county board, even though they are department heads.  *See generally*, *Farrington v. City of Richfield*, 488 N.W. 2d 13 (Minn. App. 1992).  The parties and MDHR also seem to agree on this point. And that seems to be the end of the analysis and the focus of the Plaintiff and the Amicus.  But that is only part of the issue.  And leaves the more important points unanalyzed.  These elected officials are able to operate their offices in a manner in which the County Board may not agree with.  And, under the current state of the law and statutory scheme in Minnesota, there is really nothing the County Board can do about it.

County elected officials, like the former Sheriff in this case, are semi-autonomous. The authority that a county board has over elected officials is generally limited to the authority to employ certain of the elected officials' subordinates, and the budget and salary authority granted by statute.  *See, e.g.,* Minn. Stat. §§ 387.20, 388.22.  And even the authority and control that the county board has in setting budget and salary is subject to appeal by the elected official.  *Id*.

The import of that statutory autonomy of the sheriff and the other four elected officials is this: the statutory scheme chosen by Minnesota sets up a divided form of county government insofar as certain duties and responsibilities are assigned to the five elected officials, who are deemed to have autonomy, and to be independent in the manner

and means in which the operate. This autonomy comes from a reading of statutes and the general rules of statutory construction.  Chapters 384 to Chapters 388 of Minnesota Statutes set forth the duties and responsibilities of the auditor, treasurer, recorder, sheriff, and attorney.  There is a broad array of duties assigned to each of them.  Under general rules of statutory construction, when an official is given a power or a duty to do something, unless otherwise specified, the means of accomplishing it are left to that official's judgment and discretion.  This was emphasized by the Minnesota Supreme Court in the case of *Gramke v. Cass County*, 453 N.W. 2d 22 (Minn. 1990), where the court noted that the county board's express grant of powers had to be examined in light of the sheriff's broad grant of power to keep and preserve the peace of the county.  *Id.* at 26. The duties specified in the five chapters of statutes referenced above are deemed vested in those officers.

This autonomy has most often manifested itself in arguments over language in each Chapter covering these five elected officers that says that the officer may appoint deputies and that such deputies hold office "during the pleasure" of the elected official. These statutes have been uniformly interpreted by the Minnesota courts to give the elected official absolute authority to hire and fire employees at will.  *See, e.g., Gramke*, supra; *State ex. rel Stubben v. Hennepin County Board of Commissioners*, 141 N.W. 2d 409 (Minn. 1966); *In re Administrative Appeal of Termination of Employment*, 374 N.W. 2d 754 (Minn. App. 1985).  But, this power to discharge for any reason can be limited (and in most counties has been) by any number of things, such as collective bargaining agreements, Civil Service Commissions under Chapter 387, the State Veterans Preference

Act, and personnel policies, to name a few.  *See, e.g., General Drivers Local #6 v. Aitkin County Board,* 320 N.W. 2d 695 (Minn. 1982); *In re Appeal of Termination of Employment*, 374 N.W. 2d 754 (Minn. App. 1985).  The statements set forth in the briefs submitted to this Court that the sheriff has the absolute authority to fire at will, to the extent they imply there are no constraints on that power, are inaccurate given the existence of such policies and a CBA in the County. *See, e.g.,* Agreement between Chisago County Board of Commissioners and Law Enforcement Labor Services, Inc. (Deputy Unit) for January 1, 2019 to December 31, 2021, available at https://lels.org/wp-content/uploads/2020/01/ActiveContract-Chisago-County-SO-Deputy-12-31-2021.pdf (last accessed March 18, 2021).

But beyond the protections for the firing and discipline of employees that come from other laws and contractual agreements, these department level elected officials are autonomous in the manner in which they perform the day-to-day activities involved in accomplishing the duties of their respective positions.  In fact, counsel for the MDHR has rendered opinions stating as much.  For example, a December 31, 2003 Advisory Opinion from the Office of the Minnesota Attorney General stated a county sheriff can ignore nepotism policies passed by a county board and hire his son as a deputy sheriff.  The Attorney General found that because of the powers given the sheriff by statute and the common law, that the nepotism policies of Koochiching County did not apply to the Sheriff's power to select and hire deputies. *See* Letter Opinion of the Attorney General to Koochiching County Attorney Jennifer Hasbargen (Dec. 31, 2003).

Nor can a county interfere with the duties of the officers that constitute core functions of the office by trying to take them away because the county does not like how the elected official is performing those duties. This has been decided by the courts in the context of constitutional offices of the Auditor and the Treasurer. *See State ex. rel Mattson v. Kiedrowski*, 391 N.W. 2d 777 (Minn. 1986) and *Otto v. Wright County*, 899 N.W. 2d 186 (Minn. 2017). The *Kiedrowski* case is of interest due to the facts giving rise to it. Mattson ran for State Treasurer on a platform that said the office was unnecessary and should be abolished. To prove his point, after being elected, he didn't come to work. The legislative response was to strip the office of almost all of its functions, which the Minnesota Supreme Court found was improper and violated the Minnesota Constitution. This analysis applies to the county elected officials. The Attorney General has taken that position. *See* Letter Opinion of the Attorney General to Morrison County Attorney Brian Middendorf (April 13, 2009).

Under Minnesota law, a county board has almost no authority to control the day-to-day activities of an elected official such as a county sheriff. It is certainly not at all similar to that power and control that a county would have over any other non-elected supervisor working for the county. Or any other employee of the county. To impose liability on the basis that the elected official is a supervisory employee therefore makes no sense and ignores the legal and factual realities of the relationship.

**2.     No singular person or office, including the sheriff, can act as a proxy of the county.**

Not every employee serves as a proxy or alter ego for an employer.  It is only those individuals who hold a "sufficiently high position in the management hierarchy of the company for his actions to be imputed automatically to the employer." *Faragher*, 524 U.S. at 789-90 (internal quotation omitted).  Courts have considered "presidents, owners, proprietors, partners, corporate officers, and supervisors with a high position in the management hierarchy" to meet such requirements. *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 54 (2nd Cir. 2012).  Findings of proxy or alter ego liability in public entities are rare compared to private businesses because "few public officials are vested with the same degree of power over a government entity as, for example, a corporate president has over a corporation." *Helm v. Kansas*, 656 F.3d 1277, 1286 (10th Cir. 2011).

*Helm v. Kansas*, a Tenth Circuit case, is instructive on how an individual with significant but narrow authority is not properly considered an alter ego of a government entity.  That case concerned a state district court judge who sexually harassed his administrative assistant.  The Court noted that state court judges did not exercise sufficient control "over the myriad operations of the state" to properly be considered alter egos of the state. *Id*. at 1287.  Although such judges have "considerable authority," that did not render them part of the "top echelons of the state's *management*." *Id*.

*Helm* is useful here because there is no question that the sheriff is a position that carries "considerable authority."  However, like a judge, the sheriff's authority is limited

to only one sphere.  A sheriff has significant authority over the Sheriff's Office, but no authority over the offices of the County Attorney, Auditor/ Treasurer, or Recorder.  A sheriff similarly has no authority over any of the other myriad numbers of county departments and services supervised by non-elected officials, such as Environmental Services, Human Services, or Public Works.  It is the County Board that has the sole authority over all the departments not overseen by elected officials.  The sheriff's separate authority over only one department prevents him from being someone who speaks on behalf of the county as a whole.

There is no general law for corporations that dictates who can and cannot serve as a corporation's alter ego.  However, in the context of local government, the ability to represent the county is defined by statute.  The powers of a county can only be exercised by the county board.  Minn. Stat. § 373.02.  Concluding that an individual elected official can speak on behalf of a county with sufficient authority to serve as the county's proxy would violate the plain language of Minnesota law.

While there are many other elected officials who serve as county commissioners, city councilmembers, school board members, and in other elected capacities on local government boards and commissions, the overwhelming majority of elected officials do not work in a day-to-day supervisory capacity with individual employees.  Thus, the MDHR's concern that applying the third-party liability test to elected officials will create a gap in MHRA coverage is not justified by the actual circumstances under which many governmental entities operate.  *See* Doc. 117-1 at 8, n. 4.  The fact that this case is the

first to present this question in the thirteen years since Minnesota adopted the *Faragher/ Ellerth* defense suggests as much.

Because county-level elected officials operate within a shared-power structure in which each is statutorily assigned specific independent duties, there is no basis to conclude that any one official may serve as a proxy for the entire county.  The MDHR's reference to the sheriff as the "titular head of the Sheriff's Office" proves, rather than refutes the position that the Chisago County Sheriff's Office is not interchangeable with Chisago County.  Because the sheriff's authority is distinct from the myriad other county duties and services, the sheriff is not properly considered to be the county.[1]  An individual elected official should not be considered an alter ego or proxy for the purposes of evaluating the applicability of the *Faragher/ Ellerth* defense.

## B.   ELECTED OFFICIALS WITH LIMITED SUPERVISORY AUTHORITY SHOULD BE SUBJECT TO THE THIRD-PARTY TEST FOR MHRA LIABILITY RATHER THAN THE SUPERVISOR TEST.

Admittedly, elected sheriffs do not fit squarely into the traditional applications of either the third-party or supervisory tests for MHRA liability.  Traditional cases have arisen in factual situations in which harassment was promulgated by someone who was plainly a third-party or plainly a supervisor.  *See, e.g., Costilla v. State*, 571 N.W.2d 587, 591 (Minn. App. 1997) (applying third-party test when state employee was harassed by individual who worked in similar capacity for federal government); *Faragher*.  Here,

---

[1] Of course, declining to find that an elected official is a proxy for an entire government body does not leave plaintiffs without remedy.  Plaintiffs can sue the individual responsible for harassment in their personal capacity, as Plaintiff has done in this case. *See* Complaint.

because of the statutory obligations governing officials elected to certain positions, more analysis is required than simply observing that the former Sheriff oversaw Plaintiff's work.

The Court's reasoning for imposing supervisor liability in *Faragher* provides useful guidance as to why such test is improper here. One of the bases for that liability was that "the employer has a greater opportunity to guard against misconduct by supervisors than by common workers; employers have greater opportunity and incentive to screen them, train them, and monitor their performance." *Faragher*, 524 U.S. at 803. These checks on supervisor conduct do not exist for county elected officials. While counties may recommend training to elected sheriffs, a county has no authority to screen candidates, require training, or monitor performance.

This Court has considered similar characteristics in determining whether to adopt a third-party standard for a racially hostile work environment under Title VII, noting liability for third-party conduct can exist in cases where someone other than the employer exercised "control" over an employee. *See Rosenbloom v. Senior Resource, Inc.*, 974 F. Supp. 738, 743 (D. Minn. 1997). For example, when a temp agency places an employee with a business, the temp agency can be held liable as a third-party for harassment the employee experienced in the placement. *Id.*

The temp agency analogy fits much closer to the facts here than a traditional model of supervisory liability in which the employer-corporation hires the employee-supervisor. The County is undoubtedly Plaintiff's employer, and the former Sheriff was undoubtedly her supervisor. Plaintiff and the Amicus want this Court to consider only

those two facts and make the connection that supervisory liability is proper, while ignoring that the County was not the supervisor's employer. But, as with an employee who is employed by a temp agency and then placed in an environment outside the control of the employer, the County had no control over the environment of the Sheriff's Office, including the conduct of the Sheriff himself. In such circumstances, courts analyze the claims by applying a different set of standards based on the employer's limited ability to control the actions of a third-party. That is the proper assessment here.

**C.   THE MHRA MUST NOT BE INTERPRETED TO IMPOSE STRICT LIABILITY ON PUBLIC EMPLOYERS FOR SINGLE INCIDENTS OF HARASSMENT BY ELECTED OFFICIALS.**

Even if the Court were to apply the supervisor test, the Minnesota Supreme Court has expressly rejected an interpretation of the MDHR that renders it a strict liability statute. *Frieler v. Carlson Mktg Grp., Inc.*, 751 N.W.2d 558, 567-68 (Minn. 2008). Yet, Plaintiff and the Amicus jointly advocate a position that would have precisely that effect by holding employers strictly liable for violations of the MHRA when a supervisor engages in a single incident of misconduct, while permitting the *Faragher/ Ellerth* defense if a supervisor engaged in repeated incidents of misconduct. Such an interpretation is nonsensical, inconsistent with case law and the legislative history of the MHRA.

In *Frieler*, the Minnesota Supreme Court rejected the invitation to interpret the MHRA as a strict liability statute because the MHRA's statutory language and legislative history do not support such an interpretation. *Frieler*, 715 N.W.2d at 568. This holding was in line with the Supreme Court's rejection of strict liability for supervisor harassment

14

under Title VII.  *Id.* ("The Supreme Court, in *Ellerth* and *Faragher*, rejected a strict liability standard for all cases of supervisor harassment.")  Specifically, the Court relied on representations by the Commissioner of the MDHR that, "except for cases of quid pro quo harassment, employers would be able to avail themselves of the affirmative defense, as discussed in *Ellerth* and *Faragher*."  *Id.*  In this matter, MDH asks the Court to reject the logical extension of the *Faragher/ Ellerth* defense established by *McCurdy v. Arkansas State Police,* 375 F. 3d 762 (8th Cir. 2004), and hold such defense is not available when a supervisor engages in only one incident of harassment.  *See* Doc. 117-1 at 16-17.  In such cases, an employer would never be able to show that the plaintiff failed to avail themselves of corrective opportunities offered by the employer because the employer would not have knowledge of the harassment until after it concluded.

The Minnesota Supreme Court provided a detailed explanation in support of its conclusion that the MHRA does not create strict liability for employers.  *Frieler*, 751 N.W.2d at 567-69.  The Court observed that (1) no MHRA statutory language supported a finding of strict liability; (2) strict liability would be contrary to the MHRA's purpose; and (3) the Commissioner of the MDHR, which requested revisions to MHRA language, intended for employers to use the *Faragher/Ellerth* defense.  *Id.* at 568.  Yet, Plaintiff and the MDHR ask this Court to conclude that the plain statutory language, legislative intent, and statements of the Commissioner should be disregarded in cases in which a supervisor engages in only one incident of harassment.

In fact, determining that the MHRA establishes strict liability for single incident harassment creates a perverse incentive for employers.  Such an approach suggests

employers should respond minimally in response to initial reports since the employer would be liable regardless of the actions it took.  If the employer then waited for another incident to occur, they would at least have the opportunity to plead a defense.  Plainly, such incentives do nothing to further the goals of the MHRA to create a workplace free from discrimination.

The Eighth Circuit recognized the absurdity of a defense that holds employers strictly liable for single offenses, but excuses liability in repeat cases.  *See McCurdy*, 375 F.3d at 773 (noting that strict liability would result in the same outcome for an employer that swiftly intervened to prevent further sexual harassment as one that did absolutely nothing).  *McCurdy* provides a reasonable and logical extension to *Faragher/ Ellerth* that avoids turning the MHRA into a strict liability statute.  The fact that Minnesota appellate courts have not yet been asked to adopt the *McCurdy* version of the *Faragher/ Ellerth* defense does not mean that they would or will reject it.  *McCurdy* has been cited in two nonprecedential opinions, and neither decision adopted or rejected the test.  *See Minell v. City of Minnetonka*, A08-2183, 2009 WL 2928317 (Minn. App. Sept, 15, 2009); *Frieler v. Carlson Marketing Group, Inc.*, A06-1693, 2007 WL 2107300 (Minn. App. July 24, 2007) (aff'd in part and reversed in part on other grounds by 751 N.W.2d 558 (Minn. 2008)).

Moreover, the MDHR's claim that Minnesota has adopted "both" parts of the *Faragher/ Ellerth* defense does not indicate Minnesota would reject the logical exception established in *McCurdy*.  The Eighth Circuit is plainly required to follow "both" parts of the Supreme Court's test.  But, in binding precedent for this Court, the Eighth Circuit

issued a decision that provided a logical clarification of the defense without undercutting the broader purpose of antidiscrimination laws.

The Minnesota Supreme Court recently reaffirmed its commitment to utilizing federal Title VII framework in interpreting the MHRA. *See Kenneh v. Homeward Bound, Inc.*, 944 N.W.2d 222, 230 (Minn. 2020). Plaintiff inexplicably asserts that *Kenneh* represents a *rejection* of the standards for sexual harassment claims developed by federal courts. Doc. 105 at 14. But the Court expressly declined the invitation to discard the Title VII severe-or-pervasive standard for MHRA sexual harassment claims. *Kenneh*, 944 N.W.2d at 230 ("Kenneh has not presented us with a compelling reason to abandon our precedent.") All *Kenneh* does is restate a decades-old, common-sense doctrine that federal court conclusions applying federal law to factual circumstances are not binding on Minnesota courts applying the MHRA. *Id*. at 231 (citing *Carlson v. Indep. Sch. Dist. No. 623*, 392 N.W.2d 216, 220 (Minn. 1986)). Nothing in the *Kenneh* decision suggests the Court will reject logical modifications to Title VII defenses developed through federal courts.

This interpretation does not mean, as MDHR suggests, that governmental employers are not subject to the MHRA or that there is no accountability for elected officials who violate the MHRA. *See* Doc. 117-1 at 5. The *McCurdy* defense simply recognizes that employers should not be placed in a worse position if they quickly and effectively respond to sexual harassment allegations that do not repeat.

**D.     THE COURT SHOULD NOT REQUIRE THAT COUNTIES PETITION FOR REMOVAL OF ELECTED OFFICERS IN ORDER TO TAKE PROMPT ACTION IN RESPONSE TO SEXUAL HARASSMENT.**

Contrary to the position advanced by the Amicus MDHR, the fact that there are limitations on the type of response a County could make to a report of harassment by an elected Sheriff is not evidence of lack of consideration to what could be done.  Nor is it evidence of speculation.  The most appropriate response possible, an investigation and actions to ensure that the Plaintiff did not suffer any further improper conduct, was in fact what was done.

Amicus and the Plaintiff throw out various possibilities to the Court in an effort to make the Court think there is a panoply of quick effective roads not traveled by the County here.  Simply switching to an appointed sheriff is not a realistic option.  The Court should be aware that for a county to transition to an appointed sheriff, rather than an elected one, a county's residents must vote for that option after it is properly placed on a ballot.  *See* Minn. Stat. § 375A.12.  If throwing that out is an attempt to suggest this is an appropriate response to a report of harassment by an employee serving under an elected official, it's not.  It is a long process that may or may not be adopted by majority vote of the electorate.  The fact that AMC is aware of no appointed sheriffs in the state of Minnesota tells the court all it needs to know about the practical viability of this purported remedy.

As to removing an elected county official from his or her position as an appropriate response to a report of harassment, there is a removal procedure established by state statute.  *See* Minn. Stat.§§ 351.14- 351.23.  It is certainly not a reasonable or

prompt response that quickly remedies the harm to an employee.  It's an arduous

procedure that has been in place since 1986.  In the thirty-four years since its adoption, no

county officer has been removed under that procedure.  An earlier procedure in use for

decades where the Governor could remove under certain limited circumstances resulted

in two successful removals in the last 110 years.  One in 1911 of a County Attorney and

one in 1942 of a County Sheriff.  *In re Olson*, 300 N.W. 398 (Minn. 1941); *State v.*

*Emerhart*, 133 N.W. 857 (Minn. 1911).

A cursory examination of the procedure shows it is long and uncertain, with no

guarantee of removal.  A review of the procedure involved shows that at best, if all

matters are proved and any appeal exhausted, it is likely no less than a minimum of six to

nine months after the proceeding begins that there could be an election held in the county

where the question put to the electorate would be: "Should _____ elected to the office of

_____ be removed from office?" The process begins with a petition alleging with

specificity that an elected county official committed malfeasance or nonfeasance in the

performance of official duties.  It goes to the auditor for verification of compliance with

law, and then to the clerk of the appellate courts, where the Chief Judge of the Court of

Appeals reviews the petition to determine if it alleges the type of facts, which if proven

true by clear and convincing evidence, constitute malfeasance or nonfeasance in the

performance of duties.  If it does then the Chief Judge assigns a special master to hold a

public evidentiary hearing from which there is a right to appeal to the Supreme Court. *See*

Minn. Stat.§§ 351.14- 351.23.  And assuming the evidentiary hearing supports the

allegations and the appeal, if any, is denied, the question is then presented to the

19

electorate requiring a majority vote in favor of removal.  Such a lengthy process intentionally designed to preserve due process protections for the elected official is not a practical means of affording immediate relief to a victim of harassment.

It's been suggested that elected officials be "talked to" and reminded their actions can give rise to county liability.  We all know that is simply thrown out without it being seriously believed that it would deter the type of conduct in issue here.  The Amicus can suggest harassment training.  But the Amicus ignores reality: The County cannot force the Sheriff or other elected officers to attend such training.[2]  That is why the Amicus cites no authority when making that assertion.  The point is there are minimal viable options that exist for a county to take to respond to a claim of harassment against an elected official like the former Sheriff in this case.

## CONCLUSION

For the foregoing reasons, AMC respectfully requests that this Court decline to interpret the MHRA in a manner that creates strict liability for employers who successfully stop sexual harassment after one incident.

---

[2] Nor, realistically, does it appear training would have effectively prevented the conduct in this case since the former Sheriff knew it was improper.

**RUPP, ANDERSON, SQUIRES & WALDSPURGER, P.A.**

Dated: March 19, 2021

/s/ Scott T. Anderson
Scott T. Anderson, #157405
Elizabeth J. Vieira, #392521
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
612-436-4300
scott.anderson@raswlaw.com
liz.vieira@raswlaw.com

**ATTORNEYS FOR PROPOSED**
***AMICUS CURIAE* ASSOCIATION**
**OF MINNESOTA COUNTIES**

RASW:   182003