UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle Jacobson,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>County of Chisago; and Richard Duncan, both individually and in his capacity as Sheriff of County of Chisago,<br><br>　　　　　Defendants | Case No. 18-cv-2528 (SRN)<br><br><br>ORDER ON DEFENDANT COUNTY OF CHISAGO'S<br>POST-TRIAL MOTIONS |

Celeste E. Culberth and Leslie L. Lienemann, Culberth & Lienemann, LLP, 444 Cedar St., Ste. 1050, St. Paul, MN 55101, for Plaintiff

Cally R. Kjellberg-Nelson and Dyan J. Ebert, Quinlivan & Hughes, PA, PO Box 1008, St. Cloud, MN 56302-1008, for Defendant County of Chisago

Christopher Kent Wachtler, Wachtler Law Office, P.O. Box 39, Stillwater, MN 55082, for Defendant Richard Duncan

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on two motions filed by Defendant County of Chisago: (1) Motion to Allocate Emotional Distress Damages Among Defendants [Doc. No. 221]; and (2) Motion to Amend Judgment and for a New Trial [Doc. No. 225].[1]

---

[1] Also under advisement with the Court are two motions filed by Plaintiff: (1) Motion for a Civil Penalty [Doc. No. 199]; and (2) Motion for Attorneys' Fees and Costs [Doc. No. 203]. The Court has permitted the reopening of limited discovery in light of newly discovered evidence. (*See* Pl.'s Oct. 21, 2022 Letter [Doc. No. 247].) Because this discovery may affect Plaintiff's pending motions, the Court defers ruling on them.

1

For the reasons set forth below, Defendant County of Chisago's motions are denied.

## I. BACKGROUND

### A. Factual Background

The Court briefly recounts the underlying background of this lawsuit to provide context for the motions filed by Defendant County of Chisago (the "County"). Plaintiff Michelle Jacobson worked in the Chisago County Sheriff's Office from July 2013 until approximately May 2018. (July 15, 2021 Order [Doc. No. 135] at 2.) Richard Duncan, then the Chisago County Sheriff, was Jacobson's highest-ranking supervisor. (*Id*.) Beginning in October 2017, Duncan initiated a scheme, using a pseudonym, to sexually harass Jacobson. (*Id*. at 17.) The harassment took the form of letters, emails, and text messages, and included threats of harm to Jacobson's children if Jacobson failed to comply with Duncan's sexual demands. (*Id*.) After Jacobson reported Duncan's conduct, an outside investigator concluded that Duncan had committed sexual harassment and found his conduct "shocking" and "abhorrent." (*Id*. at 8.) In May 2018, Duncan resigned from his position, and Jacobson found employment elsewhere. (*Id*. at 8–9.) On December 22, 2020, Duncan entered a plea of guilty to the criminal charge of Stalking-Intent to Injure in Chisago County District Court. (*Id*. at 10.)

Subsequently, Jacobson was diagnosed with post-traumatic stress disorder and has received mental health counseling since February 2018. (*Id*. at 9.)

In August 2018, Jacobson filed this lawsuit against the County and Duncan, asserting that the County was liable for sexual harassment under the Minnesota Human Rights Act ("MHRA); that former Chisago County Sheriff Duncan was liable for the

2

deprivation of her equal protection rights under 42 U.S.C. § 1983, and for intentional infliction of emotional distress; and that the County was liable for intentional infliction of emotion distress.  (*See generally* Compl. [Doc. No. 1].)

In July 2021, the Court ruled on the parties' cross motions for summary judgment and partial summary judgment.  As to Jacobson's MHRA claim against the County, (*id*. ¶¶ 9–66), the Court found the County was vicariously liable for Duncan's harassment of Jacobson, and granted partial summary judgment against the County in this regard.  (July 15, 2021 Order at 18.)  With respect to Jacobson's intentional infliction of emotional distress claim against both Defendants, the Court found no genuine factual dispute as to Duncan's liability, however, the Court found the County was entitled to immunity from vicarious liability on the claim.  (*Id*. at 20–23.)  Finally, the Court found Duncan liable on the § 1983 claim that Jacobson had asserted solely against him.  (*Id*. at 23.)

Among the County's motions in limine filed prior to trial, it sought to preclude the trial testimony of Jacobson's two treating healthcare providers, Therapist Linda Richnofsky and Psychologist Stephanie Forness, arguing that Plaintiff had not disclosed them as non-retained expert witnesses under Federal Rule of Civil Procedure 26(a)(2)(C). (Cnty.'s Mem. Supp. Mot. in Limine No. 1 [Doc. No. 156] at 2–7.)  At the pretrial conference, the Court ruled that the two treating providers would be allowed to testify consistent with their records about their treatment, diagnosis, and care of Jacobson, but if they testified to matters outside that scope, the Court would entertain Defendants' objections to such testimony.

From February 28, 2022 through March 4, 2022, the matter proceeded to a jury trial on the sole question of damages. The following witnesses testified in person at trial: Jacobson, Linda Richnofsky, Stephanie Forness, Todd Jacobson, and Justin Wood. Deposition testimony was read aloud for witnesses Tracy Armistead and Renee Kircher, and the videotaped deposition testimony of Sydney Fulcher was played for the jury. (Minute Entries for Mar. 1, 2022–Mar. 3, 2022 [Doc. Nos. 191–94].)

At the conclusion of Plaintiff's case, the County moved for judgment as a matter of law on the question of whether Jacobson's past educational expenses could be considered an element of economic damages, which the Court denied. (*See* Minute Entry for Mar. 3, 2022 [Doc. No. 194].)

On March 4, 2022, the jury returned the following verdict on damages:

**Question No. 1**: What amount of money will fairly and adequately compensate Plaintiff for the harm she has suffered?

(a) Past economic harm:                                      $ 0

(b) Past and future mental anguish:                   $565,000

**Question No. 2**: What amount of punitive damages do you assess against Defendant Richard Duncan?
                                                                              $550,000

(Redacted Verdict Form [Doc. No. 196] at 1.)

### B.    The County's Motions

In the County's post-trial motions, it moves to either amend the judgment or obtain a new trial under Federal Rule of Civil Procedure 59. First, it argues that the Court erred as a matter of law on summary judgment by finding the County vicariously liable under

the MHRA for Duncan's conduct and that judgment must be amended to find no vicarious liability. (Cnty.'s Mem. Supp. R. 59 Mot. [Doc. No. 227] at 5.) Alternatively, the County contends that a new trial is warranted because of evidentiary errors related to the testimony of Jacobson's treating providers, Richnofsky and Forness. (*Id*.)

Also, the County moves for relief by asking the Court for an allocation of emotional distress damages between the Defendants. It argues that the jury's award of $565,000 for past and future mental anguish fails to allocate the total between the County and Duncan to "appropriately reflect the three different claims asserted by Plaintiff." (Cnty.'s Mem. Supp. Alloc. [Doc. No. 223] at 1.) It requests that the Court allocate "one-third of the emotional distress award [to the County] to reflect the MHRA claim and two-thirds to Defendant Duncan to reflect the Section 1983 and intentional infliction of emotional distress claims." (*Id*.)

Duncan takes no position with respect to the County's Motion to Amend Judgment and for a New Trial, but as to the Motion for an Allocation, he argues that the County should be solely responsible for the emotional distress damages. (Duncan Letter [Doc. No. 235] at 1.) Alternatively, Duncan's counsel argued at the motions hearing that the emotional distress damages should be evenly allocated between the Defendants, as Duncan's conduct was the same course of conduct that created liability on the claim for intentional infliction of emotional distress and the § 1983 claim.

Plaintiff opposes both of the County's motions.

## II.   DISCUSSION

### A.   Motion to Amend Judgment and for a New Trial

Federal Rule of Civil Procedure 59 provides a mechanism for a party to seek a new trial or to alter or amend a judgment. Fed. R. Civ. P. 59(a) & (e). Rule 59(e) "serve[s] the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence,'" and motions for such relief "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hill*s, 141 F.3d 1284, 1286 (8th Cir. 1998)).

#### 1.   Amend Judgment

As noted, the County moves to amend the Court's finding of vicarious liability based on Duncan's conduct. The County cross-references its prior arguments in support of summary judgment. (Cnty.'s Mem. Supp. R. 59 Mot. at 5.)

Because the County does not identify any errors of law or fact, nor does it present newly discovered evidence, the Court reaffirms its prior finding of the County's vicarious liability under the MHRA, (July 15, 2021 Order at 18), and denies the portion of the County's motion seeking to amend judgment.

#### 2.   New Trial

"A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996) (citations omitted);

6

*Fletcher v. Tomlinson*, 895 F.3d 1010, 1024 (8th Cir. 2018) (stating that the "key question" when considering a motion for new trial is "whether a new trial is necessary to prevent a miscarriage of justice.") (quotations omitted).  A showing of prejudice requires the moving party to prove that the result at trial would have been different but for the district court's error.  *Acuity v. Johnson*, 776 F.3d 588, 596 (8th Cir. 2015).

Again, the County argues that a new trial is warranted because the Court erred in admitting the trial testimony of Jacobson's two treating healthcare providers.  (Cnty.'s Mem. Supp. R. 59 Mot. at 5–6.)

In her Initial Disclosures, Jacobson disclosed Richnofsky and Forness as fact witnesses who had provided her with treatment for emotional distress, (Kjellberg-Nelson Aff. [Doc. No. 167], Ex. B (Pl.'s Initial Disclosures) at 2–3), and likewise, in Plaintiff's Answers to Interrogatories, she stated her intention "to call her treating counselors at trial as fact witnesses." (*Id.*, Ex. A (Pl.'s Answer to Interrogs.) at No. 15.)  Jacobson provided the County with her counseling records.  (*See* Pl.'s Opp'n to Cnty.'s Mot. in Limine No. 1 [Doc. No. 174] at 4.)   The County did not depose either of the treating providers. (Lienemann Decl. [Doc. No. 177] ¶ 1.)

Prior to trial, the County filed a motion in limine in which it sought to preclude Richnofsky and Forness from testifying altogether or, "[a]t the very least," to preclude them from offering expert opinions on causation. (*See* Cnty.'s Mem. Supp. Mot. in Limine No. 1 at 2–6.)  Exclusion of the treating providers' testimony was warranted, the County maintained, because such testimony would otherwise constitute undisclosed expert testimony in violation of Federal Rule of Civil Procedure 26(a)(2). (*See id.*)  In opposition,

7

Jacobson argued that because Richnofsky and Forness would not be offering expert opinions, the Rule 26(a)(2) expert disclosure requirements were inapplicable, and Jacobson had properly disclosed Richnofsky and Forness as fact witnesses.  (Pl.'s Opp'n to Cnty.'s Mot. in Limine No. 1 at 1–2.)

As noted earlier, the Court deferred expressly ruling on the motion at the time of the pretrial conference.  Rather, the Court held that it would permit the two treating providers to testify as fact witnesses, provided their testimony would be limited to their examination, diagnosis, and treatment of Jacobson.  To the extent their testimony went beyond those subjects and ventured into expert opinion testimony, the Court stated that the County would be free to object to any particular questions or testimony on the ground that it was undisclosed expert testimony.

At issue is whether Plaintiff's treating healthcare providers were subject to the general disclosure requirements for fact witnesses, Fed. R. Civ. P. 26(a)(1), or the disclosure requirements for non-retained expert witnesses, Fed. R. Civ. P. 26(a)(2)(C), which were adopted in 2010.[2]  The failure to disclose an expert witness as required under Rule 26(a)(2) may result in the exclusion of the witness's testimony at trial.  *McCoy v. August Fiberglass Coatings, Inc.*, 593 F.3d 737, 746 (8th Cir. 2010).

---

[2] Expert witnesses who are retained specially for purposes of litigation—not at issue here—are subject to more stringent disclosure requirements, including the production of a report, under Rule 26(a)(2)(B).  *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018).

As one court has observed, "Treating physicians are both fact witnesses and, by virtue of their education, training and experience, experts. In the ordinary course of treating and advising a patient they often must form opinions about the patient's medical condition and future needs." *Crabbs v. Wal-Mart Stores, Inc.*, No. 4:09-CV-00519-RAW, 2011 WL 499141, at *2 (S.D. Iowa Feb. 4, 2011). The Eighth Circuit has found that treating providers may be considered non-retained experts subject to the disclosure requirements of Fed. R. Civ. P. 26 (a)(2)(C), in cases involving opinion testimony on matters outside the course of treatment, such as causation. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 701 (8th Cir. 2018) (affirming the exclusion of testimony from treating orthopedic surgeon who disclosed as fact witness, but whose testimony would include causation for truck driver's injury); *Brooks v. Union Pacific Railway Co..*, 620 F.3d 896 (8th 2010) (affirming exclusion of expert opinion testimony from treating physician who would opine on causation of plaintiff's injury).

However, depending on the nature of the testimony, expert disclosure of a treating provider may be unnecessary if the provider's testimony is confined to the provider's observations, treatment, and diagnosis of the plaintiff. *Gruttemeyer v. Transit Auth.*, 31 F. 4th 638, 644 (8th Cir. 2022). In *Gruttemeyer*, the Eighth Circuit affirmed the district court's admission of the testimony of a treating provider, who was designated only as a fact witness and not disclosed as an expert witness under Rule 26(a)(2), because the provider "testified as a treating practitioner only," and his testimony did not venture "outside the realm of treatment such as causation of a condition." *Id*. As the district court observed in the underlying motion in limine decision in *Gruttemeyer*, "Generally, a treating

9

physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Gruttemeyer v. Transit Auth. of City of Omaha*, No. 8:18CV70, 2020 WL 974004, at *2 (D. Neb. Feb. 28, 2020).

The Court finds that here, as in *Gruttemeyer*, Plaintiff's treating providers did not offer expert opinion testimony outside the scope of Jacobson's counseling records. First and foremost, Richnofsky and Forness served as lay witnesses who, among other things, provided foundation for their counseling notes, which Jacobson provided to the County during discovery. Consistent with the counseling records, Richnofsky and Forness testified about their clinical impressions and observations of Jacobson and how their observations informed their diagnosis and treatment. Their testimony consisted of facts relevant to the determination of damages including the length and frequency of treatment, Jacobson's demeanor during treatment, Jacobson's report of symptoms and events, and their diagnoses and treatment of Jacobson. (*See* Pl.'s Opp'n to R. 59 Mot. [Doc. No. 236] at 4.) This is similar to *Crabbs*, in which two treating physicians were not disclosed as non-retained experts under Rule 26(a)(2)(C), but were nevertheless permitted to testify, limited to the subject matter of their treatment, as disclosed in the medical records, and to opinions formed in the course of treatment. 2011 WL 499141, at *3.

Unlike authority on which the County has relied in support of its argument that Jacobson's providers were undisclosed expert witnesses, (Cnty.'s Mem. Supp. Mot. in Limine No. 1 at 4), here, the sole issue at trial was the amount of Jacobson's damages, which the County acknowledges. (Joint Statement of the Case [Doc. No. 169]) (identifying as the "major issue[]"—and only issue: "what amount of damages will fully compensate

Michelle Jacobson for sexual harassment and intentional infliction of emotional distress", and stipulating to vicarious liability for Duncan's harassment of Jacobson). Jacobson's providers had no reason to testify about causation, as it was no longer an issue at trial, nor did they have reason to offer other opinion testimony. *Cf. Vanderberg*, 906 F.3d at 706 (finding exclusion of testimony from undisclosed expert was proper where plaintiff offered expert opinion from treating provider on causation); *Brooks*, 620 F.3d at 899 ("Because the type of injury Brooks suffered had no obvious origin, expert testimony is necessary to establish even that small quantum of causation required by FELA.") (cleaned up). Rather, causation had already been established, as reflected in the Court's summary judgment ruling. (July 15, 2021 Order at 18–20) ("As a result of her distress, Jacobson relocated her family to another county—requiring her children to change schools; she has been diagnosed with post-traumatic stress disorder, and has received counseling since January 2018; and her distress has manifested in physical symptoms and affected her family life, as detailed in declarations submitted by Jacobson, her husband, and her daughter.")

Specifically, the County objects to Richnofsky's testimony about "therapy in general," "rule followers," and persons in a high state of anxiety. (Cnty.'s Mem. Supp. R. 59 Mot. at 5.) Similarly, the County contends that Forness impermissibly offered an undisclosed expert opinion about "people who are victimized." (*Id*.)

While the County continues to object to Richnofsky's testimony that identified Jacobson as a "rule follower" or referred to the feelings of "those in a high state of anxiety," including Jacobson, (*id*.), such testimony was grounded in Jacobson's counseling records and based on Richnofsky's factual observations and treatment of Jacobson. (Kjellberg-

11

Nelson Aff. [Doc. No. 228], Ex. A (Mar. 2, 2022 Tr. at 7 (testifying about counseling notation that stated, "[Jacobson] has a strong sense of what is right and wrong and admits she is a rule follower."); 13–14 (testifying about counseling record that stated, "[Being a rule follower] makes it even harder for her to come to terms with someone she thought was the same way and turned out not to be."); 22 (discussing counseling records that documented Jacobson's anxiety score).) The Court does not consider this testimony to be undisclosed expert opinion testimony. Moreover, counsel for the County did not object to Richnofsky's testimony regarding persons experiencing a high state of anxiety. (*See* Mar. 2, 2022 Tr. at 21.)

Similarly, the Court does not consider Forness's testimony concerning "victimization" to constitute expert opinion, nor did the County object to this particular testimony at trial. (*See id*. at 54–55.) Forness was asked to explain how she responded to Jacobson's fears about possible future harm and difficulty in trusting her own instincts, reflected in a statement Jacobson had made during counseling that Forness recorded in her records that "[Jacobson's] radar was off the first time." (*Id*.) Forness explained that phrase, stating that victimized persons place responsibility for the harmful conduct on themselves as a way to regain control, and "[Jacobson] is saying that those—that ability to control had failed her and she was hurt anyway." (*Id*.) This factual testimony was based on Forness's personal observations and factual information that Jacobson provided during treatment, as reflected in the counseling records. Forness's testimony did not veer into the realm of expert opinion testimony and therefore was not subject to the expert disclosure

12

requirements under Rule 26(a)(2)(C). *Cf. Brooks*, 620 F.3d at 899 (finding that expert testimony was necessary to establish causation).

Moreover, in order to obtain a new trial, the County must prove that but for the alleged evidentiary errors in permitting the treating providers' testimony, the outcome of the trial would have been different. *Burris v. Gulf Underwriters Ins. Co.,* 787 F.3d 875, 880 (8th Cir. 2015) ("An allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result."). It has not done so. Again, the sole issue at trial was the amount of Plaintiff's damages. Notably, the testimony of Richnofsky and Forness was not the only evidence upon which the jury could base a damages award for Jacobson's emotional distress. In addition to the two treating providers, Jacobson herself presented compelling, credible testimony at trial about her emotional distress damages, as did her husband and daughter, and the County stipulated to the admissibility of Jacobson's counseling records. (Stip. [Doc. No. 176] ¶ 2. )

The County argues that it suffered prejudice because the providers' testimony was cumulative and led to inflated damages. (Cnty.'s Mem. Supp. R. 59 Mot. at 6.) The Court disagrees. Richnofsky and Forness treated Jacobson at different times. Forness provided treatment after Jacobson's health insurance changed and Richnofsky was no longer in Jacobson's preferred healthcare network. (Mar. 2, 2022 Tr. at 26.) Testimony addressing the full length of Plaintiff's treatment was relevant to the severity and continuing nature of Jacobson's emotional distress, and the County lodged no objection at trial that the providers' testimony was cumulative or duplicative, effectively waiving the issue, absent

13

plain error. *Olson v. Ford Motor Co.*, 481 F.3d 619, 626–27 (8th Cir. 2007). In sum, the Court finds the admission of the treating providers' testimony was not in plain error, as the testimony remained within the bounds of fact testimony, was neither duplicative nor cumulative, nor does it support a finding of prejudice that would warrant a new trial.

The Court also rejects the County's argument that the following exchange between Plaintiff's counsel and Forness led to inflated damages or constituted undisclosed expert opinion about future damages: "Q. Okay. And is your current plan to continue seeing [Jacobson] bi-weekly? A. Yes." (Mar. 2, 2022 Tr. at 59.) Forness's statement, "Yes," constituted her sole testimony regarding whether she intended to continue to treat Plaintiff. This testimony was relevant to the duration of Plaintiff's emotional distress and length of treatment with Forness. Moreover, at trial, the County's objection to this testimony was based on whether Jacobson's treatment records continued beyond January of 2021, not whether the testimony constituted improper expert opinion about future damages or undisclosed expert opinion in general.[3] (*Id*. at 59–60.) Accordingly, the County has also waived this issue by not objecting on this basis, as the Court finds no plain error in admitting this testimony. *Olson*, 481 F.3d at 626–27.

---

[3] Explaining the basis for the objection at trial, the County's counsel stated, "Your honor, I think the last [counseling] record that we have is from treatment in January of 21, so I don't think there's any basis for this witness to testify about her current treatment after that date which is what I'm understanding she's talking about now." (Mar. 2, 2022 Tr. at 59.) Plaintiff's counsel, however, pointed to other medical records dating well into 2021 that had been marked and admitted in evidence, and the Court overruled the objection. (*Id*. at 60.) In addition, on cross examination, counsel for Defendant Duncan asked Forness if she was continuing to treat Jacobson, to which she responded in the affirmative, without drawing any objection from the County's counsel.

For all of these reasons, the Court finds that it did not err in admitting the testimony of Plaintiff's two treating providers.[4] Consequently, the County is not entitled to a new trial on damages.

### B. Motion to Allocate Emotional Distress Damages

As noted, the County argues that only one-third of the jury's award of $565,000 for emotional distress damages should be allocated to it, with Duncan responsible for the remaining two-thirds. (Cnty.'s Mem. Supp. Alloc. at 1–4.) The County bases the one-third allocation on the fact that the Court found the County liable to Jacobson on only one of the three claims, whereas Duncan was liable on both claims against him. (*Id.*)

---

[4] Even if Richnofsky and Forness are viewed as non-retained experts, three years before trial, Jacobson identified them as healthcare providers and trial witnesses who would testify regarding Jacobson's emotional distress damages, and she provided her counseling records. (Lienemann Decl. ¶ 1.) Unlike a typical case in which liability is determined at trial, the scope of the testimony from Richnofsky and Forness was both limited and predictable. The County could not claim surprise as to the content of this testimony, since it was relevant only to emotional distress damages and was based on the underlying counseling records. *See Cattanach v. Burlington N. Santa Fe*, No. 13-cv-1664 (JRT/JSM), 2015 WL 5521751, at *12 (D. Minn. Sept. 18, 2015) (finding plaintiff had adequately disclosed treating physician under Rule 26(a)(2)(C) where physician was identified as a witness who might testify at trial and physician produced the only medical record relevant to plaintiff); *see also Washam v. BNSF Rwy. Co.*, No. 3:19-cv-00231, 2020 WL 5880133, at * 17 (E.D. Ark. Oct. 2, 2020) (finding disclosure requirements of Rule 26(a)(2)(C) met where plaintiff produced medical records and disclosed four areas of anticipated testimony); *Oskar v. United States*, No. 4:14-CV-04144-KES, 2017 WL 2937598, at *3 (D.S.D. July 10, 2017) (concluding that expert physicians were properly disclosed under Rule 26(a)(2)(C) where each physician would testify regarding patient's pre-surgery health, the actual surgical procedure, and patient's prognosis).

In response, Jacobson contends that emotional distress damages cannot be apportioned and the nature of the County's liability precludes apportionment or allocation. (Pl.'s Opp'n to Alloc. [Doc. No. 237] at 4–5.) In any event, Jacobson argues that the County waived any objection to the jury instructions and verdict form as to emotional distress damages by not raising this issue. (*Id*. at 3–4.)

Under the MHRA, "an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over a victimized employee." *Frieler v. Carlson Mktg. Group, Inc.*, 751 N.W.2d 558, 570 (Minn. 2008). In the Court's summary judgment order, it found that Duncan qualified as Jacobson's supervisor and the County failed to raise a triable issue regarding the defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). (July 15, 2021 Order at 11–16.) Accordingly, the Court found the County vicariously liable under the MHRA based on Duncan's harassing conduct. (*Id*. at 18.) This finding of liability requires an award of actual damages, including an award of emotional anguish damages. Minn. Stat. § 363A.29 subd. 4.

The County fails to identify any legal authority in support of its position that Defendants' responsibility for damages must be apportioned to reflect Plaintiff's three legal claims. (*See generally* Cnty.'s Mem. Supp. Alloc. at 1–4.) This lack of legal authority is unsurprising because the County's vicarious liability does not give rise to apportionment, which typically arises when joint tortfeasors' actions cause the plaintiff's harm or "when innocent forces combine with the conduct of a tortfeasor to contribute to a plaintiff's

16

overall harm." *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1294 (8th Cir. 1997). However, "[i]n cases where fault is not subject to apportionment, *as in cases involving vicarious liability*, fault would not be separately apportioned among an employee and employer." Introductory Note, 4 *Minn. Prac., Jury Instr. Guides—Civil Div. B*, Cat. 28, Note 1 (6th ed.) (emphasis added); *see also* RESTATEMENT (THIRD) OF TORTS § 13 (2000) ("A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other, regardless of whether joint and several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury."); *Schreiber v. Lee*, 260 Cal. Rptr. 3d 859, 866 (1st Dist. 2020), *review denied*, (July 22, 2020) ("A vicariously liable defendant and a negligent defendant for whom the vicariously liable defendant bears liability, are responsible for the same damages.").

The County acknowledges that the Court has found it vicariously liable for Duncan's conduct. (Jt. Intro. to Case [Doc. No. 169] at 1.) Because the County's liability is vicariously based upon Duncan's conduct, and the harm is indivisible, the County is equally liable for the full amount of the damages award. *See Devane v. Sears Home Improvement Prods., Inc.*, No. C5-03-305, 2003 WL 22999363, *6 (Minn. Ct. App. Dec. 23, 2003) (finding apportionment inapplicable and stating, "Where the harm is indivisible, each actor is liable for the entire harm."); *Est. of Heller*, No. C0-98-1359, 1998 WL 901757, at *3 (Minn. Ct. App. Dec. 29, 1998) ("The trial court did not err in imposing joint and several liability on Heller and the other appellants" where appellants stipulated that Heller maintained and exercised control, including "final decision-making authority.").

With the County's misplaced focus on Plaintiff's three different legal claims, it contends that it would be possible for the Court to reduce its damages liability to one-third based on simple division, whereas it would have been impossible for the jury to apportion damages. However, in arguing that the jury would have been unable to apportion damages, the County actually underscores the complete inapplicability of apportionment. The County contends that "the jury could not have been asked to separate the damages out between the three claims as such a request would invite the jury to award damages contrary to this Court's liability findings." (Cnty.'s Mem. Supp. Alloc. at 3.) Indeed, separating damages "between the three claims" would run counter to the Court's finding of the County's vicarious liability.

Even if Jacobson's emotional distress damages were capable of being apportioned or allocated, the County bore the burden of establishing apportionment, if applicable, but failed to raise the issue at any time, until its post-trial motion. *Jenson*, 130 F.3d at 1293 ("[I]t is the defendant who must prove that any damage caused by other factors was divisible, and if so, what portion of damages the defendant caused."); *Devane*, 2003 WL 22999363, at *10 (finding defendants joint and severally liable, given their failure to prove that their acts were divisible or to identify which party caused any particular portion of the damages). Consequently, even if the emotional distress damages could be apportioned between the County and Duncan, the County has waived this argument by not timely asserting it. *See Jenson*, 130 F.3d at 1293.

Accordingly, for all of the foregoing reasons, the County's Motion to Allocate is denied. Because of the County's vicarious liability, it is responsible for the same emotional distress damages as Duncan.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant County of Chisago's Motion to Allocate Emotional Distress Damages Among Defendants [Doc. No. 221] is **DENIED**; and

2. Defendant County of Chisago's Motion to Amend Judgment and for a New Trial [Doc. No. 225] is **DENIED**.

.

Dated: October 28, 2022                             s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge